FRANK A. WEISER (SBN 89780)
maimons@aol.com
**LAW OFFICES OF FRANK A. WEISER**
3470 Wilshire Blvd., Suite 614
Los Angeles, CA 90010
Tel: (213) 384-6964
Fax: (310) 383-7368

BENJAMIN FENTON (SBN 243214)
bfenton@fjlawgroup.com
**FENTON JURKOWITZ LAW GROUP, LLP**
1990 South Bundy Drive, Suite 777
Los Angeles, CA 90025
Tel: (310) 444-5244
Fax: (310) 444-5280

Attorneys for Plaintiffs:
PAVILIONS MOTEL, INC.
SAEED FARZAM
GOHARSHAD FARZAM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVILIONS MOTEL, INC.; SAEED FARZAM; GOHARSHAD FARZAM, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SANTA MONICA, a municipal corporation; ELIO PALACIOS; Does 1 to 10 inclusive. <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES; DECLARATORY AND INJUNCTIVE RELIEF; STATE SUPPLEMENTAL CLAIM** <br><br> **[VIOLATION OF FEDERAL CIVIL RIGHTS – 42 U.S.C. SECTION 1983]** |

1

**FEDERAL CIVIL RIGHTS COMPLAINT**

Plaintiffs PAVILIONS MOTEL, INC., SAEED FARZAM, and GOHARSHAD FARZAM ("collectively "PLAINTIFFS," and individually "PM," "SF," GF") allege as follows:

## INTRODUCTION

1. This is a federal civil rights complaint for violation of Plaintiffs' federal constitutional rights filed under 42 U.S.C. Section 1983 and a state supplemental claim for a petition for a writ of mandate pursuant to <u>California Code of Civil Procedure</u> §1094, seeking judicial review and reversal of the City of Santa Monica's final administrative Decision ("Decision") to revoke Plaintiffs' business license following a hearing held on February 25, 2025. Plaintiffs contend that the City violated their constitutional rights under the United States Constitution, and that the Decision was arbitrary, capricious, an abuse of discretion, and unsupported by the findings or the evidence. Plaintiffs further contend in the City's actions taken that violated their federal civil rights, the City of Santa Monica for the purpose of closing PM, a family owned and operated motel, and driving Plaintiffs out of business in order to transfer the real property that PM is located on to a third party private developer at a deflated value.

## JURISDICTION AND VENUE

2. Jurisdiction of the federal court exists under 28 U.S.C. Sections 1331 and 28 U.S.C. Section 1343(a)(3). This action which arises under the United States Constitution and laws of the United States, specifically the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution and involves violations of federal law actionable under 42 U.S.C. Section 1983.

2

**FEDERAL CIVIL RIGHTS COMPLAINT**

State supplemental jurisdiction exists under 28 U.S.C. Section 1367.

## PARTIES

3. Plaintiff PM is and at all relevant times was a California corporation operating a lawful motel business located at 2338 Ocean Park Blvd., Santa Monica, CA 90405.

4. Plaintiffs SF and and GF are and at all relevant times were owners of PM.

5. Defendant CITY OF SANTA MONICA, a municipal corporation ("CITY") is a municipal entity organized under the laws of the State of California and is responsible for regulating business licenses within its jurisdiction. Defendant ELIO PALACIOS ("EP") is an individual whose principal place of business is in Riverside, CA.

6. The true names and capacities, whether individual, corporate, associate or otherwise, herein named as Does 1 through 10, and persons heretofore unknown involved in the actions taken against the plaintiffs is unknown to them at this time. Plaintiffs are informed and believe and based thereon allege that each of the DOE defendants are responsible in some manner for the events herein referred to, and that plaintiffs' injuries and damages as herein alleged were proximately caused by those defendants. Plaintiffs sue said defendants by such fictitious names on the grounds that the true names and capacities of said defendants are unknown to them at this time. Plaintiffs will amend this complaint when the true names and capacities of said Doe defendants are ascertained. Each

3
**FEDERAL CIVIL RIGHTS COMPLAINT**

reference in this complaint to "defendant," defendants," or a specifically named defendant also refers to defendants sued under their fictitious names.

## FACTS COMMON TO ALL CLAIMS

7. On September 5, 1990, Plaintiffs purchased an 18-unit budget motel located at 2338 Ocean Park Blvd. Santa Monica, CA 90405. Following renovations, they renamed the motel to "Pavilions Motel" (hereinafter MOTEL), which Plaintiffs owned and operated continuously for 35 years.

8. On October 20, 2015, the MOTEL was incorporated as PM

9. In or around April 2020, with the start of the COVID pandemic, the number of MOTEL customers declined and Plaintiffs decided to attempt to assist in combatting Santa Monica's homelessness crisis and thereby accepted primarily indigent customers from CITY- funded nonprofits including St. Joseph's Center, Step Up on Second, the People Concern, and Ocean Park Community Center.

10. On August 10, 2023, Plaintiff SF sent an email to Detective Jacob Holloway of the Santa Monica Police Department, requesting that the police department assist him in removing Keith McGovern, a known drug dealing criminal and squatter inhabiting Room #7 of the MOTEL, who had threatened SF on multiple occasions and who was not paying any rent.

11. On February 6, 2024, Plaintiffs received a letter from the Santa Monica City Attorney's Office regarding concerns of a nuisance at the MOTEL, including proposed recommendations Plaintiffs could enforce in abating any nuisance.

12. On April 7, 2024, Plaintiff SF met with Santa Monica City Attorney Doug Sloan and City Manager David White at Santa Monica City Hall to discuss the CITY'S concerns. Plaintiff SF agreed to make changes to the MOTEL to address the CITY'S concerns.

13. On May 7, 2024, Plaintiffs received another letter from the Santa Monica City Attorney's Office which restated recommended actions to undertake to abate any nuisance.

14. In or around May 2024, the Crime Prevention Coordinator for the CITY, Halima Barreto, provided Plaintiffs with a "Santa Monica Police Department Security Assessment" outlining specific measures that Plaintiffs could take to secure the MOTEL to meet the CITY's safety standards.

15. Between February 6, 2024 and June 17, 2024, Plaintiffs complied with the suggestions of the letters and the SMPD Security Assessment by implementing the following changes:

- erecting a massive steel gate in the back of the parking lot at the cost of approximately $10,000
- installing motion-sensored lights in the MOTEL courtyard and back alley
- installing LED flood lights in the parking lot
- installing RING cameras all around the MOTEL, including in the parking lot, courtyard, office, and alley
- removing several U-haul trucks in the MOTEL'S parking lot after Plaintiffs permit request was not approved
- filing an eviction lawsuit against the squatter and criminal habitating room

5

**FEDERAL CIVIL RIGHTS COMPLAINT**

#7

-submitting a trespass authorization form

-changing registration cards to add telephone numbers and to state that no substances are   allowed

16. On May 16, 2024, the CITY filed a "Complaint for Nuisance Abatement and Injunction" against Plaintiffs as Defendants. The causes of action included the following: (1) Drug Abatement Act, brought by the People of State of California (Health & Safety Code §§11570-11587); (2) Maintenance of a Public Nuisance, brought by the People of State of California (Civil Code §3479); (3) Maintenance of a Public Nuisance, brought by City of Santa Monica (S.M.M.C. Chapter 13.06). In regard to the first cause of action, the Complaint requested that "the Court order the Property closed for one year and impose civil penalties of $25,000 against each Defendant to prevent them from continuing to maintain a nuisance at the Property."

17. On May 26, 2024, City Manager David White walked through the MOTEL. At the visit, City Manager White inquired to Plaintiff SF why a car in the MOTEL's parking lot had an expired tab. At the same visit, City Manager White observed several metal pieces on the side of a trash bin at the MOTEL and inquired to Plaintiff SF whether those were the parts of "stolen bikes" that customers had brought there.

18. On June 13, 2024, the CITY filed a "First Amended Complaint for Nuisance Abatement and Injunction" against Defendants. This First Amended Complaint added a fourth cause of action for Unlawful Business Practices brought by the People of the State of California (Business & Professions Code § 17200). In regard to the fourth cause of action, the Complaint requested that Defendants be "individually assessed a civil penalty of $2,500 for each and every act of unfair

**FEDERAL CIVIL RIGHTS COMPLAINT**

competition." and that "since Defendants engaged in a continuing nuisance, each day constitutes an act of unfair competition and Defendants should each individually be assessed a civil penalty not to exceed $5,000,000 for those daily violations."

19. On June 17, 2024, the CITY sent Plaintiffs a letter revoking Plaintiffs' Business License No. 061216 to operate the MOTEL. The revocation was done by the CITY without a prior hearing or notice and opportunity to be heard.

20. On June 26, 2024, Plaintiffs appealed the CITY'S revocation of the MOTEL'S business license and requested a hearing before the CITY'S Business License Review Board.

21. On September 10, 2024, September 13, 2024, September 17, 2024, September 24, 2024, October 4, 2024, and October 18, 2024, an appeal hearing was conducted in multiple sessions before Defendant EP as the Hearing Officer.

22. Defendant EP is an individual who is not a full time employee of the CITY but is a private individual who prior to the hearings set forth in paragraph 21 above, acted as a contract outside hearing officer on CITY license revocation and administrative issues with the CITY. In doing so, the CITY'S policy, custom, and practice is to unilaterally select EP as the hearing officer and unilaterally pay EP for his services per hearing.

23. In appointing EP as the Hearing Officer regarding the Plaintiffs' appeal of their business license, the CITY unilaterally selected EP as the hearing officer and unilaterally paid EP for his services per the hearings he conducted as set forth in paragraph 21 above, without Plaintiffs' prior consent or knowledge.

24. At the hearing, Plaintiffs presented documentary evidence and witness testimony in support of the continued operation of the business and in rebuttal of

7
**FEDERAL CIVIL RIGHTS COMPLAINT**

the CITY'S allegations. At least 6 individuals, including neighbors, community members, and former customers of the MOTEL testified favorably on behalf of Plaintiffs in regard to their positive experiences with the MOTEL.

25. On November 18, 2024, EP released a "Decision" which stayed the MOTEL'S license revocation for a period of 90 days and allowed Plaintiffs the opportunity to timely follow and satisfy certain conditions outlined in the Decision within the 90 days.

26. Between November 18, 2024 and February 25, 2025 and within the 90-day period following the November 18, 2024 Decision, Plaintiffs undertook the following actions in order to comply with the Decision:

- Within 30 days of the order, Plaintiffs' daughter, Rachel Farzam, assumed co-equal operating responsibility and timely notified the CITY about it.
- On December 12, 2024, the Los Angeles Sheriff's department removed the squatter and criminal in Room # 7, Keith McGovern. In addition, on that date, Plaintiffs removed the two individuals who were formerly responsible for operating the motel in the nighttime hours, as well as another individual who had been staying at the MOTEL for a prolonged period.
- From December 19, 2024 through March 31, 2025, Plaintiffs employed Armel Naoue to work night shifts as a full-time employee. Plaintiffs deemed Naoue to be qualified based on his education in accounting, his reliability, his past experience formerly working in a hotel in France, his customer service experience working at a bakery in Beverly Hills, and his experience working at a restaurant as a waiter.
- On December 9, 2024, Plaintiffs contracted with an agency called "OceanSide Patrol Security services," a licensed security bureau, in order for the agency to be present 7 nights a week, make three foot patrols at the

MOTEL per night, and to prepare written reports. No issues were reported during the time in which the agency was contracted to patrol the MOTEL.

-On January 3, 2025 Plaintiffs obtained the virtual guard feature through RING, in order to allow a live person with two-way communication to guard the MOTEL property between the hours 6:30 p.m. to 7:30 a.m. each day.

-In early February 2025, CITY code enforcement officers confirmed verbally with Plaintiffs' son, David Farzam, that Plaintiffs satisfactorily completed the implementation of approximately 100 proposed additional changes to the MOTEL, including but not limited to updating light fixtures, updating smoke detectors, replacing sewer caps, replacing carbon monoxide detectors, covering clean-outs inside each room, painting certain areas, replacing screens on room windows, tiling the bathrooms, and replacing screens for roof vent.

-On December 4, 2024, Plaintiffs contracted with Pacific Shore pest control, a fumigation company to spray and service the MOTEL twice a month in order to ensure the elimination of any pests.

-On January 2, 2025, Plaintiffs contracted with ADP to complete all of the payroll for all employee payments.

-In or around December 2024, Plaintiffs updated the MOTEL'S check-in registration cards in order to request additional information, including drivers license numbers, date of birth, and customer signatures, as well as two statements on the registration cards about no illegal drugs or substances allowed on the property.

-In or around December 2024, Plaintiffs had meetings with two companies including CloudBeds and Lodgify in order to streamline the MOTEL'S services to become online.

9

**FEDERAL CIVIL RIGHTS COMPLAINT**

-Between December 2024 and February 2025, there was no drug activity or notable criminal activity with very little to no police presence at the motel.

27. On December 12, 2024, EP sent a letter to all parties which granted the CITY'S request to clarify the Decision dated November 18, 2024, by way of an addendum clarifying that Plaintiffs must maintain the ordered changes for a period of one year, a condition which EP agreed to.

28. On January 10, 2025, EP issued an additional hearing date for February 25, 2025 on further motion of the CITY.

29. On February 25, 2025, an additional hearing was held to address the CITY's grievance that Plaintiffs did not comply with the conditions of the Decision.

30. In February and March 2025, both prior to and following the February 25, 2025 hearing, Plaintiffs accommodated the CITY'S demand, without a warrant, in providing the CITY with requested registration cards as well as hundreds of clips of video footage for the prior several months, including clips from the MOTEL parking lot, courtyard, and back alley.

31. On March 24, 2025, EP upheld the revocation in a written decision, finding that Plaintiffs had failed to comply with the conditions of the Order such that stay of the Revocation was lifted and the Revocation was in full force and effect. The Decision was based primarily on three separate issues, including (1) separate isolated instance(s) of public urination in the parking lot of the MOTEL, (2) a finding that the MOTEL'S newly hired night manager was "unqualified," and (3) PETITIONER'S refusal to provide the CITY with access to video footage from inside the MOTEL'S office, even though witness testimony confirmed that the office was a private area used as the night manager's living space and despite the

fact that PETITIONERS' provided the CITY with access to other RING cameras on and surrounding the MOTEL.

32. On March 25, 2025, CITY Attorney Andrew Braver sent an email to Plaintiffs, recommending that Plaintiffs review their obligations under the Santa Monica Municipal Code Chapter 13.04 (Vacant Properties).

33. On March 29, 2025, the MOTEL ceased operation and closed its doors to the public.

34. On April 2, 2025, EP sent a letter to all parties granting the CITY'S request to clarify the Decision dated March 24, 2025, by way of an addendum clarifying the time in which judicial review must be sought. No such clarification or notice had been given by EP or the CITY to the Plaintiffs prior to April 2, 2025. The Decision is the final administrative decision on the CITY's revocation of the Plaintiffs' business license and cannot be appealed to any other CITY body or agency.

35.  On May 20, 2025, CITY Attorney Romy Ganschow reached out via email to Pplaintiffs' attorney to inform him that a local developer by the name of "Todd Allen" was interested in buying and developing the MOTEL, and confirmed in writing that if Plaintiffs are "seriously considering" selling the property "through an arms-length transaction," the CITY would be open to discussing potential resolution of the civil case.

35. By May 28, 2025, Plaintiffs removed all furniture in all of the rooms and erected gates surrounding the MOTEL, in order to comply with the vacant properties code provision.

36. On May 30, 2025, the CITY'S code enforcement officers visited the MOTEL and verbally confirmed that the MOTEL was in compliance with the vacant property code.

37. On information and belief, Plaintiffs allege, that as a result of the actions, by the Defendants, and each of them, as set forth in paragraphs 7-36 above, including but not limited to the closure of the motel and the conditions set forth in the Decision, the motel has substantially depreciated in value by at least 90% in value, or more, from the value of the motel prior to the actions by the Defendants and the Decision to close the motel; and Plaintiffs have lost a substantial amount of income in operation of the motel cannot sell it as a motel, its highest and best possible use, and that Plaintiffs, and each of them, loss is at least $10,000,000.

Based on the above facts, Plaintiffs allege the following claims.

### FIRST CLAIM OF RELIEF

**(Violation of 42 U.S.C. Section 1983 for Violation of Federal Civil Rights by All Plaintiffs Against All Defendants)**

38. Plaintiffs allege and incorporate herein by reference each and every allegation contained in paragraphs 1-37 above.

39. Plaintiffs allege that in doing all of the things herein mentioned, the CITY and all of the defendants, and each of them, acted under color of the statutes,

regulations, customs and usages of the City of Santa Monica and the State of California for purposes of "state action" and "color of law" under 42 U.S.C. Section 1983.

39. Plaintiffs further allege that in doing all of the things herein mentioned, the CITY and all of the defendants, and each of them, violated and further threaten to violate the constitutional and civil rights of the Plaintiffs, in particular their individual rights to be free from retaliatory actions by the Defendants, and each of them, for exercising their rights under the First and Fourteenth Amendment of the United States Constitution Petition and Grievances Clause; the Fourth Amendment of the United States Constitution Search and Seizure Clause; the Fifth Amendment of the United States Constitution Takings Clause; the Fourteenth Amendment of the United States Constitution Due Process Clause, both as to its procedural and substantive components, and the Fourteenth Amendment of the United States Constitution Equal Protection Clause.

40. Plaintiffs further allege that in doing all of the things herein mentioned, the CITY, violated and further threaten to violate the constitutional and civil rights of the Plaintiffs, as described in paragraphs 7-37 set forth herein, pursuant to the CITY'S official policy, custom or practice.

41. The individual defendants are not entitled to any immunity, qualified or otherwise, and the individual City officials employed by the City whose identity are

unknown now, are not entitled to qualified immunity.

42. As a proximate result of the foregoing actions of the CITY, and the defendants and each of them, Plaintiffs have been injured and suffered economic and non-economic damages according to proof at trial but believed to be not less than $10,000,000.00 against the CITY and each Defendant, and are also entitled to appropriate declaratory and injunctive relief. Plaintiffs are also entitled to their reasonable attorney's fees under 42 U.S.C. Section 1988..

## SECOND CLAIM OF RELIEF

**(Petition of Writ of Mandate by All Plaintiffs Against All Defendants)**

43. Plaintiffs allege and incorporate herein by reference each and every allegation contained in paragraphs 1-42 above.

44. Plaintiffs equitable state remedy in seeking review of the Decision and deny the Plaintiffs' appeal, is to seek mandamus review by way of this Writ Petition under California Code of Civil Procedure section 1094.5.

45. The City violated its duties both under California state law and federal law, and specifically, although not limited to, violating by adoption of the Decision and to deny the Plaintiffs' appeal and the holding of the Decision in closing the motel with the conditions as imposed, in a manner as required by law, without the support of competent evidence, and was arbitrary and capricious.

46.  Plaintiffs elect to not expose their federal constitutional claims in this state Writ Petition and preserve their federal constitutional claims to be litigated under 42 U.S.C. 1983 and by way of an <u>England</u> reservation. See <u>England v Medical Examiners</u>, 375 U.S. 411 (1964).

47.  By the City failing to give the required notice under <u>California Code of Civil Procedure</u> section 1094.6, this Writ Petition is tolled under <u>California Code of Civil Procedure</u> section 1094.6 and applicable California law, and is also equitably tolled under Ninth Circuit precedent.

WHEREFORE, Plaintiffs pray judgment against the Defendants, and each of them, as follows:

**FIRST CLAIM FOR RELIEF**

1   For damages according to proof at trial but

believed to be not less than $10,000,000.00;

2.  For appropriate declaratory and injunctive relief;

3. For attorney's fees;

**SECOND CLAIM FOR RELIEF**

4..  For a writ of mandate vacating the Decision and the CITY's revocation of Plaintiffs' business license;

**FOR ALL CLAIMS FOR RELIEF**

5.  For costs of suit;

6..  For such other and further relief as the Court deems proper.

**FEDERAL CIVIL RIGHTS COMPLAINT**

Dated: June 18, 2025          LAW OFFICES OF FRANK A. WEISER

By: /s/ Frank A. Weiser
FRANK A. WEISER, Attorney for
for Plaintiffs PAVILIONS MOTEL,
INC., SAEED FARZAM
GOHARSHAD FARZAM

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial pursuant to F.R.C.P. 38.

Dated: June 18, 2025          LAW OFFICES OF FRANK A. WEISER

By: /s/ Frank A. Weiser
FRANK A. WEISER, Attorney for
for Plaintiffs PAVILIONS MOTEL,
INC., SAEED FARZAM
GOHARSHAD FARZAM

.

**FEDERAL CIVIL RIGHTS COMPLAINT**